**GREYHOUND LINES, INC., and Trailways, Inc., Appellees,**

v.

**Christopher S. BOND, Governor of Missouri, John Ashcroft, Attorney General of Missouri, The Highway Commission and Transportation Commission of Missouri, The Department of Public Safety of Missouri, and Missouri State Highway Patrol, Appellants.**

No. 83–1124.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 18, 1983.

Decided Jan. 17, 1984.

**456**

John Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Edward Robertson, Deputy Atty. Gen., Jefferson City, Mo., for appellants.

\* The Hon. Diana E. Murphy, United States District Judge for the District of Minnesota, sitting by designation.

1. The statute reads:
    A bus transportation company shall allow the driver or operator of a bus to temporarily install and operate in the bus a citizens band radio, technically limited to transmit and receive frequency of 27.065 megahertz and 27.-185 megahertz, including earphones, antenna and any necessary equipment purchased and installed by the licensed driver or operator of the bus.

2. The Hon. Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri. The District Court's opinion is not reported.

Leonard Singer, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for appellees.

Before ROSS and ARNOLD, Circuit Judges, and MURPHY,\* District Judge.

ARNOLD, Circuit Judge.

This suit challenges the validity of the "Missouri Bus Bill," Mo.Ann.Stat. § 307.176 (Vernon Supp.1983), which requires bus companies to allow their drivers to use citizens band (CB) radios while operating a bus.[1] The statute would prevent the plaintiff bus companies from enforcing their rules prohibiting such use. The District Court,[2] after considering conflicting evidence on whether use of CB radios would promote public safety, held that the statute violated the Interstate Commerce Clause[3] and that it was preempted by federal law and issued a permanent injunction against its enforcement. Since we agree that Congress has preempted state regulation in this area, we affirm.[4]

### I.

In the Bus Regulatory Reform Act of 1982, Pub.L. No. 97–261, 96 Stat. 1102, Congress undertook to "reduce unnecessary and burdensome Government regulation" of the intercity bus industry, *id.* § 2, in order to promote "a safe, sound, competitive, and fuel-efficient motor bus system," *id.* § 3. As part of its focus on safety, Congress, in § 25 of the Act, addressed the question whether bus drivers should be allowed to use CB radios. After considering evidence

3. U.S. Const. art. I, § 8, cl. 3.

4. The District Court held that the Missouri statute was impliedly preempted by the Department of Transportation Act, 49 U.S.C. § 1651 (1976) (current version at 49 U.S.C.A. § 101 (West Supp.1983)) and by the Federal Motor Carrier Safety Regulations, 49 C.F.R. pts. 390–397 (1982). Our holding, on the other hand, rests on 49 U.S.C.A. § 11111 (West Supp. 1983), and we affirm on that basis. See, *e.g., Brown v. St. Louis Police Dep't,* 691 F.2d 393, 396 (8th Cir.1982). We find it unnecessary to decide whether the Missouri statute is preempted by the federal laws relied upon by the District Court, as well, or to decide whether the statute violates the Interstate Commerce Clause.

in favor of allowing the use of CB's and noting that three federal agencies, including the Department of Transportation, had adopted a policy to encourage CB's, see H.R.Rep. No. 334, 97th Cong., 1st Sess. 48–49 (1981), Congress nonetheless declined to pass a bill that would have required bus companies to allow CB radios [5] and decided that further study was necessary.

Section 25 directs the Secretary of Transportation to commission a study by the National Academy of Sciences and, after receiving the Academy's report and recommendations, to initiate a rulemaking proceeding. In accordance with this scheme, § 25(d)(1) added a new section to the United States Code, 49 U.S.C.A. § 11111 (West Supp.1983), which provides:

> **§ 11111. Use of citizen band radios on buses**
>
> (a)(1) A motor carrier of passengers providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title shall allow the operator of any motor vehicle providing such transportation to temporarily install and operate a citizen band radio in such vehicle *if* the Secretary of Transportation issues a rule or regulation which recommends that operators of such vehicles be allowed to temporarily install and operate such radios in such vehicles.
>
> (2) Citizen band radios installed and operated in motor vehicles providing transportation of passengers subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title shall be installed and operated in accordance with the guidelines established by the Secretary of Transportation under section 25(c) of the Bus Regulatory Reform Act of 1982.
>
> (b) The Commission shall issue such regulations as it considers necessary to carry out this section.

(Emphasis added).

### II.

The language of § 11111, standing alone, indicates that Congress intended to vest sole authority in the Secretary of Transportation to determine whether requiring bus companies to allow their drivers to use CB radios would promote public safety. The clear implication is that unless the Secretary issues a rule or regulation permitting it, such use is prohibited. We are also persuaded by Congress's evident intent to alleviate the problem of nonuniform state regulation in general. Congress found "that State regulation of the motor bus industry has, in certain circumstances, unreasonably burdened interstate commerce ...." Bus Regulatory Reform Act of 1982, § 3, 96 Stat. 1102, 1102. Representative Clausen, the ranking minority member of the Committee on Public Works and Transportation, elaborated on this point during floor debates in the House:

> [I]t is important to recognize that the intercity bus industry is part of a national transportation system and to the degree it is regulated, it should be treated as such .... Otherwise, transportation service becomes balkanized ....

127 Cong.Rec. H8588 (daily ed. Nov. 19, 1981). No state other than Missouri regulates the use of CB radios on interstate passenger buses.

### III.

The State concedes that § 11111 gives the Secretary of Transportation authority to regulate the use of CB radios, but argues, relying on *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 171–72, 98 S.Ct. 988, 1001, 55 L.Ed.2d 179 (1978), that since the Secretary has not yet addressed and acted upon the question, the Missouri law is not preempted. However, in *Ray* the authorizing statute was silent as to the effect of the Secretary's failure to regulate. Here, in contrast, § 11111 requires companies to allow bus drivers to use CB radios only "if" the Secretary makes the recommendation. The Court in *Ray* recognized that when Congress entrusts the Secretary with authority to determine whether a practice

---

5. H.R.1914, 97th Cong., 1st Sess. (1981).

would promote public safety, "Congress intend[s] uniform national standards ... that would foreclose the imposition of different ... state requirements." *Id.* at 163, 98 S.Ct. at 997. Here, as in *Ray,* "[e]nforcement of the state requirements would at least frustrate what seems to us to be the evident congressional intention to establish a uniform federal regime" regarding the use of CB radios. *Id.* at 165, 98 S.Ct. at 998.

Accordingly, we hold that § 11111 preempts the Missouri statute and affirm the grant of the injunction against its enforcement. We direct the District Court, however, to retain jurisdiction pending the outcome of the rulemaking proceeding prescribed by § 11111 and, if necessary, to vacate or modify the injunction to correspond with the Secretary's determination.

Affirmed with instructions.